TERRITORY OF HAWAII, BY MARSTON CAMPBELL, SUPERINTENDENT OF PUBLIC WORKS, v. TUE BUN.

RESERVED QUESTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED NOVEMBER 4, 1910.    DECIDED NOVEMBER 17, 1910.

HARTWELL, C.J., PERRY AND DE BOLT, JJ.

CONTRACTS—*duress—sewer rates.*

The defendant's agreement "to pay such rates annually for the use of the sewer as may be fixed," made with the superintendent

of public works in order to obtain permission to connect prem-
ises with the public sewer, is enforceable under the decision in
*Territory* v. *Brown,* 19 Haw. 41, for rates fixed prior to the act
of 1904 (Sec. 1036 R. L.), and is not made under duress by reason
of a statement to the defendant by an inspector of the board of
health that the defendant would be prosecuted for nuisance if he
did not connect with the sewer.

CONTRACTS—*defense of illegality not available.*

The defendant having obtained permission to connect his prem-
ises with the public sewer upon his promise to pay the rates
and having paid them for a year and a half without protest and
stopped payment without any claim that the rates were illegal
and having continued the use of the sewer for his premises, is not
in a position to assert the illegality of the rates or the unconsti-
tutionality of the act under which they were fixed.

## OPINION OF THE COURT BY HARTWELL, C.J.

This was an action brought in the district court of Hono-
lulu May 14, 1909, to recover $117 "for unpaid sewer rates
from January 1, 1903, to June 30, 1909, for use of plain-
tiff's sewer during said time in Maunakea street in said Ho-
nolulu in connection with the premises owned and occupied
by defendant, at the semi-annual rate of $9, and which said
rate defendant promised and agreed to pay," the plaintiff
claiming that there was due from defendant "by reason there-
of said sum of $117 together with ten per cent. penalty there-
on fixed by law." The defendant appealed to the circuit court
from the judgment in the sum of $126 and costs, and the par-
ties waiving jury the defendant presented the defenses of
duress, failure of consideration and the statute of limitations,
claiming that his agreement with the superintendent of public
works of June 3, 1901, "to pay such rates annually for the
use of the sewer as may be fixed," was not voluntarily made,
but was forced upon him by the necessity of obtaining per-
mission to connect his premises with the public sewer in order
to avoid the penalty imposed by regulation of the board of
health if he should not discontinue use of privy vaults and
cesspools and transform the same into approved waterclosets

connected with the sewer system. The defendant contends that rates fixed by the superintendent prior to the act of April 1904 (Sec. 1036 R. L.) were without legislative sanction and that those fixed under the act were illegal on the grounds that the act was a delegation of legislative power, that the rates were in the nature of a special tax or assessment made without opportunity for him to be heard concerning them, and also because interest on sewer bonds and expense of maintenance and repair of the sewer, on the basis of which taxes were fixed under the act, were provided for by general appropriations to which the defendant's general taxes had contributed.

It appeared by the defendant's evidence that in June, 1901, he had built and plumbed a lodging house on Maunakea street in Honolulu and wished to make a cesspool for the premises, but upon being told by an inspector of the board of health that if he did this he would be prosecuted for nuisance and that he must connect with the sewer, he signed the application to the superintendent of public works, given to him by the plumbers, in the form referred to in *Territory* v. *Brown*, 19 Haw. 41, for permission to connect with the public sewer, agreeing therein "to pay such rates annually for the use of the sewer as shall be fixed." His premises were then connected with the sewer and until December 31, 1902, he paid the rates which were fixed at $9 semi-annually, and then stopped paying because, as he now says, he wanted to have his own cesspool and was not satisfied with the sewer.

There is no evidence that the defendant made the agreement for payment of sewer rates from fear of being held liable for the penalty under the regulation of the board of health, for his application for permission to connect his premises with the sewer was made upon his being told by the health officer that otherwise he would be prosecuted for nuisance. It was true that cesspool drainage in that locality might have been a nuisance and hence the defendant acted wisely, and not under illegal coercion, in avoiding the risk.

Under the decision in *Territory* v. *Brown*, 19 Haw. 41, which case is not before us for consideration de novo, the agreement was enforceable for rates fixed prior to the act of 1904.

If the act was unconstitutional on any of the grounds asserted by the defendant, then the rates fixed thereunder could not lawfully be required of the defendant if he is in a position to assert such illegality and enforce a claim to be exempt from paying them by reason thereof.

The consideration of the agreement was the permission to connect with the sewer. The defendant claims that he was entitled to use the sewer without payment as its construction and maintenance had been provided for by territorial appropriations to which his general taxes had contributed. But even if this were true the fact remains that he received the benefit of the permission to connect with the sewer without asserting the claim that he was entitled to do this without permission, and the consideration, which is not illegal or unlawful, of this benefit received by him remains. His payment of rates without protest for a year and a half, stopping payment for no other avowed reason than because he preferred cesspool drainage, and his continued use of the sewer do not leave him in a position at this late day to dispute the legality of the rates fixed under the statute of 1904 or the validity of the statute under which they were fixed, his premises having meanwhile received the benefit of sewer drainage and he having avoided the risk of prosecution for a nuisance if he had made a cesspool and undertaken to dispense with the sewer.

It is not every one who can interpose constitutional objections to a statute. The rule volenti non fit injuria is sometimes applied in such cases, being another way of stating the position of one whose acquiescence in the operation of a statute precludes him from afterwards excusing non-performance of acts required by it on the ground of its unconstitutionality.

The acquiescence in this case may be inferred from the defendant's conduct. If he had seasonably made the objections which he now makes to the legality of the rates or to the constitutionality of the act his objections might have received consideration from the superintendent who would then have had an opportunity to be advised whether the objections were well taken, and in that event he might have applied to the legislature for an amendment of the law, or if funds were not otherwise available for the sewer he might have applied to the governor for resort to the appropriation of $50,000 made for contingent purposes; the latter alternative, however, is not concurred in by the minority.

The following cases illustrate the rule. The constitutionality of a law requiring the bond of an officer to be a lien on the real estate of an officer and his sureties cannot be attacked by persons voluntarily executing the bond. "The doctrine of due process of law certainly cannot be invoked by those who have voluntarily executed the bond." *Mt. Vernon* v. *Kenlon*, 89 N. Y. Suppl. 817. One who had been deprived by an unconstitutional statute of a right to have damages assessed for the taking of his land was held to have waived his right to insist upon the unconstitutionality by having agreed that "if the property should be abandoned by the respondent for his benefit his damages would be very small, if any, and that one thousand dollars would be a reasonable sum for him under the agreement." *Hellen* v. *City of Medford*, 188 Mass. 42. A taxpayer whose land was sold for nonpayment of taxes was held to be "not in a position to raise the question of the constitutionality of the acts" under which his property was sold, for "a person may by his own acts or by his omission to act waive a right which he might otherwise have under the provisions of the constitution." *Bacon* v. *Rice*, 14 Idaho, 107, 118. The defendant, imprisoned under a city ordinance for selling adulterated milk, had furnished samples of the milk without objecting to the constitutionality of the ordinance re-

quiring this to be done and was held to have acquiesced in it. "He cannot be heard to question the regularity or the legality of the execution of the ordinance, to the execution of which he consented." *State v. Stone,* 46 La. Annual, 148. Defendants, who built a dam under a statute requiring their payment of damages, were held not to be at liberty to question the constitutionality of the provision for assessing the damages. *People* v. *Murray,* 5 Hill, 468. In an action to foreclose a lien on a street assessment for work done on the defendant's lots it was held that the appellants, by failure to object to the proposed work at the time named in the published notice, "cannot now be heard to make the objection which they should have made before the work commenced and in the manner prescribel in the statute," the objection including the claim that the assessment was in conflict with the fourteenth amendment. *O'Dea* v. *Mitchell,* 144 Cal. 374. See also *Vose* v. *Cockroft,* 44 N. Y. 415.

"A person may by his acts or omission to act waive a right which he might otherwise have under the constitution of the United States as well as under a statute." *Pierce* v. *Somerset Ry.,* 171 U. S. 641, 648. "An insolvent debtor who proves his debt in insolvency and accepts the benefit of proceedings under a state statute thereby waives any right which he might otherwise have had to object to the validity of the statute as impairing the obligation of contracts." *Eustis* v. *Bolles,* 150 U. S. 361. See especially *Shepard* v. *Barron,* 194 U. S. 553, 567.

The plaintiff in argument says he claims for rates payable at the end of each semi-annual period from January 1, 1903, to June 30, 1904, and thereafter semi-annually in advance, thereby avoiding the question whether the statute of limitations runs against the Territory.

The circuit judge is advised that the defenses above named are not sustainable on the evidence offered and that the defendant's motion for judgment should be denied.

*E. W. Sutton, Deputy Attorney General (Alexander Lind-*

NOVEMBER, 1910. .                      273

say, Jr., Attorney General, with him on the brief), for plaintiff.

P. L. Weaver (Magoon & Weaver on the brief) for defendant.