# IN THE MATTER OF THE APPLICATION OF FRANK B. CRAIG FOR A WRIT OF HABEAS CORPUS.

### ORIGINAL.

SUBMITTED MAY 4, 1911. DECIDED MAY 15, 1911.

### ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TERRITORIES—*legislative powers under Organic Act.*

By section 55 of the Organic Act the Legislature of this Territory was vested with the power of taxation and also the right to legislate in exercise of the police power.

CONSTITUTIONAL LAW—*taxation and regulation of business of emigrant agent.*

In Re Craig, 20 Haw. 483.

The business of emigrant agent is one which may lawfully be regulated as well as taxed.

Act 48 of the Session Laws of 1911, constitutes a lawful exercise by the Legislature of the power of taxation and of the police power and so far as the petitioner in this case is in a position to raise constitutional objections to its validity it is held to be not unconstitutional.

Constitutional objections to a statute will ordinarily not be considered when raised by a person whose rights are not affected.

OPINION OF THE COURT BY ROBERTSON, C.J.

The petitioner, Frank B. Craig, a citizen of the United States, was arrested and incarcerated at the police station, at Honolulu, by the sheriff of the City and County of Honolulu, pursuant to a warrant of arrest issued by the district magistrate of Honolulu, on the 7th day of April, 1911. The warrant was based upon a sworn complaint which charged that the petitioner and one J. C. Bell, on the 6th day of April, A. D. 1911, "did unlawfully engage in soliciting, inducing, procuring and hiring laborers to go beyond the Territory of Hawaii, and did then and there act as emigrant agents in that at the time aforesaid and place aforesaid, they, the said Frank B. Craig and J. C. Bell, did engage in soliciting, inducing, procuring and hiring certain laborers, residents of Honolulu aforesaid, more than thirty in number, but whose names are to deponent unknown, to go beyond said limits of the Territory of Hawaii, without obtaining a license so to do as by law provided and required, then and there and thereby violating Section 2 of Act 48 of the Session Laws of 1911 of the Territory of Hawaii."

The petitioner applied for a writ of *habeas corpus,* and the same was issued and made returnable before this court. By certain oral rulings made in open court certain allegations contained in the respondent's return and certain other allegations contained in the petitioner's answer to that return were struck out on the ground that they were mere conclusions of law or otherwise immaterial. That the petitioner was arrested and imprisoned pursuant to the warrant, as alleged, is admitted.

In Re Craig, 20 Haw. 483.

The questions presented for determination are whether, on any of the grounds advanced by counsel for the petitioner, the statute is invalid, and, as to some of those grounds, whether the petitioner is in a position to urge them.

The first, second and ninth sections of Act 48, of the Session Laws of 1911, read as follows:

"Section 1. Any person who individually or acting through or for another or others, is engaged in soliciting, inducing, procuring or in hiring laborers to go beyond the limits of the Territory of Hawaii, whether under promise of employment or otherwise, shall be deemed an emigrant agent within the meaning of this Act."

"Section 2. No person shall engage in business as an emigrant agent without first obtaining a license from the Treasurer of each county or city and county in which such business is entered into or carried on. No such license shall be issued until the applicant therefor shall have complied with the following conditions:

"First: He shall file with said Treasurer a sworn statement of the person or persons employing him and the place to which it is proposed that laborers shall be sent or taken and of the nature, terms and conditions of the employment or inducements to be given laborers he may recruit.

"Second: He shall file with said Treasurer a bond in the penal sum of Twenty-five Thousand Dollars ($25,000.00) running to said Treasurer and his successors in office conditioned that he will in all respects comply with the provisions of this Act and that he will satisfy any judgments which may be rendered against him in any action either at common law or under statute for enticing, inducing or persuading laborers from their employers or for inducing laborers to break their contract of employment.

"Third: He shall pay an annual license fee of Five Hundred Dollars ($500.00).

"Every such license shall be issued subject to all rules, regulations, conditions and restrictions which may be subsequently imposed by law."

"Section 9. Any person who shall engage in business as an emgirant agent, without first obtaining a license as in this Act provided, or who shall violate any provision of this Act, shall be

guilty of a misdemeanor, and upon conviction shall forfeit his license, if he has one, and shall be punished by a fine not exceeding One Thousand Dollars ($1000.00) or by imprisonment for not more than one year, or by both such fine and imprisonment."

The other sections of the statute impose restrictions and conditions upon the business and operations of emigrant agents.

Section 3, provides for the registering in the office of the treasurer of the Territory of the name, age and nationality of each laborer recruited; the name and address of the last employer of such laborer, and certain other information, and authorizes a charge of fifty cents for registering each name. Section 4, provides that every emigrant agent shall give a bond in the sum of one hundred dollars to each laborer conditioned for the faithful performance of any contract or promise made with or given to any laborer, a duplicate original of which to be filed in the office of the treasurer. Section 5, forbids the recruiting of any minor without the written consent of his parents or guardian, or, if the minor have no parent or guardian, then of the attorney-general. Section 6 (as amended by Act 83, Laws of 1911), provides that no emigrant agent shall induce, entice or persuade, or attempt so to do, any servant or laborer who shall have contracted to serve his employer for a specific length of time, to leave such service for the purpose of leaving the Territory without the consent of the employer, nor shall he aid or abet any such servant or laborer in leaving said service and the Territory without such consent. Section 7, provides that the sureties on any bonds given under the provisions of the act shall justify as resident freeholders of the county and as worth in real estate situate in the county the amount of the bond over and above all liabilities, and that such bonds shall be subject to approval as to form and sufficiency by the treasurer. Section 8 (as amended by said Act 83), authorizes the treasurer, in case of any breach of condition of any such bond, to enforce such bond in any court of competent jurisdiction for the use and benefit of the person injured by such breach. Section 10, repeals Act 57

of the Laws of 1905, except as to rights accrued thereunder and acts done in violation thereof. And section 11, requires persons holding licenses under the act of 1905 to comply with the provisions of this act except that payment of the license fee shall not be required during the unexpired term of any license held under the prior statute.

The validity of the statute is assailed on the following grounds: (1) That the license fee required by the statute is wholly unreasonable, and, as an exercise of the police power is void because of its restrictive and prohibitory character. (2) That the statute is in conflict with the provisions of section 10 of the Organic Act, that no suit shall be maintained for the specific performance of any contract for personal labor or service, and that no remedy shall exist for the breach of any such contract except a civil suit for damages for such breach. (3) That it is in conflict with the interstate commerce clause of the Constitution. (4) That it abridges the freedom of speech and of the press in violation of the First Amendent of the Constitution. (5) That it is in conflict with the Fourteenth Amendment because—(a) It restricts the right of the citizen to move from this Territory to another or other parts of the United States, and so abridges his privileges and immunities. (b) It denies to persons within the Territory the equal protection of the laws, and is arbitrarily and unreasonably discriminative, inasmuch as the business of hiring persons to labor within the Territory is not subjected to a like or any tax, or to any regulations whatsoever; and because other persons duly licensed under section 1418c of the Revised Laws, are engaged in this Territory as general emigrant agents, and who are legally authorized to carry on the same business as that defined in the statute in question without being required to pay the license fee required by this statute and without being bound by its regulations and requirements. (c) That the statute unduly restricts the right of the citizen to contract, and amounts to a prohibition of the right to carry on a lawful

calling and occupation, thereby depriving the petitioner of his property without due process of law. (d) That the statute is class legislation, discriminating arbitrarily and without reasonable basis. (6) That it is in conflict with the Fifth Amendment in that it unduly restricts the right of contract, and amounts to a prohibition of the right to carry on a lawful occupation, and deprives the petitioner of his property without due process of law. . (7) That the act in question is one of three statutes, the other two being Acts 67 and 70 of the Session Laws of 1911, which, taken together, establish in this Territory a system of involuntary servitude. (8) That the alleged unconstitutional features of the statute are so connected with the general scope of the act that the whole should be held invalid.

The respondent disputes all those contentions, and asserts that, as the petitioner does not claim to have paid or tendered the amount of the license fee required to be paid by section 2 of Act 48, he is not in a position to raise any question but that of the validity of the single requirement as to the fee and, that, in any event, because the petitioner never obtained a license under this statute he should not be allowed to raise any question as to the validity of any of the conditions or restrictions imposed by the statute upon licensees.

As to the point that because the petitioner does not claim to have paid or tendered the amount of the license fee he should not be heard to question the validity of any part of the statute except that relating to that fee. There would seem to be some merit in this contention though it is not necessary to pass upon it. *City of Fort Smith* v. *Scruggs* (Ark.), 69 S. W. 679, 682; *Wells* v. *Torrey,* 144 Mich. 689; *In re Atcherley,* 19 Haw. 535, 541. But in view of the fact that among the averments of the answer to the return, which the court ordered to be stricken out, were allegations under which the petitioner sought to show that he held an emigrant agent's license under the act of 1905, which is recognized and protected by the provisions of the

eleventh section of the statute under review, we think that the petitioner should be accorded the benefit of the assumption which we shall indulge for the purposes of this case only that he is in the position of one holding a valid license under the act of 1905, which is equivalent to that of having tendered the amount of the fee under the present act. We shall, therefore, consider and pass upon the validity of each of the requirements of section 2 of this act.

As to the point that because the petitioner never obtained a license under this statute he is not in a position to urge any objection to the validity of any of the provisions of the statute which impose restrictions upon persons holding licenses under the act. In this connection it must be noted that the bond required to be given by an applicant for a license shall, according to the "second" sub-section of section 2, be conditioned "that he will in all respects comply with the provisions of this Act." Unless a licensee, after having given such a bond, could, in defense of an action for the breach of the conditions of such bond, set up the invalidity of the provisions of the sections of the act following section 2, it would seem that he ought to be heard upon such matters before the giving of the bond. Counsel for the respondent contend that such a defense would be open to the obligors in an action on the bond. That is at least doubtful. *Daniels* v. *Tearney,* 102 U. S. 415; *State* v. *Stark,* 75 Mo. 566; *Territory* v. *Tue Bun,* 20 Haw. 267. And we think it would not be inappropriate to consider all questions which the petitioner may be in a position to urge irrespective of the point here made. *Gundling* v. *Chicago,* 177 U. S. 183; *Fischer* v. *St. Louis,* 194 U. S. 361, 372.

On the other hand, some of the questions presented by the petitioner will not be considered for the reason that he is in no wise interested in or concerned with them. Within this category fall the petitioner's points above numbered 2, 5 (a) and 7, which, as the petitioner does not claim to be a laborer or servant, cannot affect any rights of his. Likewise as to the

point numbered 4, in which connection it is urged that the statute would prevent a delegate of a labor organization from advising laborers to leave the Territory for the purpose of bettering their condition; and would apply to a tourist agent soliciting laborers to take a pleasure trip beyond the limits of the. Territory, and to a newspaper publishing an advertisement of employment to be had elsewhere in the United States. The petitioner does not claim to be either a delegate of a labor organization, a tourist agent, or a newspaper publisher. A statute must be assumed to be valid until some one complains whose rights it invades. Though it may be said that an unconstitutional statute must be wholly void, yet it is well settled that the objection of unconstitutionality will be listened to only when it is made by one having a legal interest in defeating the statute. *Clark* v. *Kansas City,* 176 U. S. 114; *Cronin* v. *Adams,* 192 U. S. 108; *Hatch* v. *Reardon,* 204 U. S. 152; *Territory* v. *Miguel,* 18 Haw. 402.

Proceeding, then, to the consideration of the questions presented for our determination, the first point is, that the license fee required by the statute is unreasonable and void because of its restrictive and prohibitive character. The Congress of the United States, through the Organic Act (Sec. 55), empowered the legislature of this Territory to enact "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." The power of taxation, therein included, was conferred upon the local legislature with all the completeness and effectiveness with which that power is vested in and exercised by the legislature of any of the States. *Peacock* v. *Pratt,* 121 Fed. 772. So also was the right to legislate in exercise of the police power conferred. *Territory* v. *Guyott,* 9 Mont. 46.

Attacks upon the validity of any statute enacted by the legislature of the Territory in the exercise of either of those powers will, therefore, fail unless it appears that some provision of the Federal Constitution or a statute of the United States has

been trenched upon. *Walker* v. *New Mexico, etc., R. R. Co.,* 165 U. S. 593, 604. There is no good reason why a single statute should not include the exercise of both the power of taxation and the police power. In the case of *Gundling* v. *Chicago,* in which was involved the validity of an ordinance of the City of Chicago prohibiting the sale of cigarettes by any person without first procuring a license, paying a license fee, furnishing a bond, and complying with certain other conditions, the Supreme Court said, "It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an exercise or privilege tax" (177 U. S. 189). And in the case of *Williams* v. *Fears,* 179 U. S. 270, where the constitutionality of a statute of Georgia, which imposed just such a license fee upon emigrant agents as that involved here, was sustained as a valid tax, the court said, "It would seem, moreover, that the business itself is of such a nature and importance as to justify the exercise of the police power in its regulation" (p. 275). A business may be both regulated and taxed under the one statute.

In addition to *Williams* v. *Fears,* which must be regarded as a conclusive authority in support of the validity of the license fee provided for by section 2 of this statute, reference may be made to the following cases in which the rulings there made have been followed. *State* v. *Hunt,* 129 N. C. 686; *State* v. *Roberson,* 136 N. C. 587; *Kendrick* v. *State* (Ala.), 39 So. 203; *State* v. *Napier* (S. C.), 41 S. E. 13. Those cases hold that the business of emigrant agents is one which may be taxed and also regulated.

Counsel for the petitioner cite the cases of *State* v. *Moore,* 113 N. C. 697, and *Joseph* v. *Randolph,* 71 Ala. 499. An examination of those cases shows that neither of them is an authority against the validity of the tax imposed by our statute. The statutes there considered differed in material particulars from ours, and in so far as those cases contain any expressions at variance with the later cases above referred to they must be

considered as having been qualified or disapproved by them.

It is contended that the amount of the license fee is unreasonable. It being settled that the business of an emigrant agent is one which may lawfully be subjected to the payment of a tax, it is not for this court to say that the rate which the legislature has fixed is too high. The determination of the amount or rate of a tax is purely a legislative function. Cooley on Taxation (2nd ed.) 5; *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548; *McCray* v. *United States,* 195 U. S. 27; *State* v. *Roberson,* supra, at page 590.

It would seem to be beyond the reach of successful argument to the contrary that the business in question is one which may very properly be subjected to careful, precise, and reasonable regulation. In *State* v. *Napier* the court said, "It is easy to see that the business is of such a nature that the legislature might well see fit to thus regulate it, not only for the protection of the agricultural and manufacturing interests of the State, but for the protection of the laborers themselves against the acts and solicitations of designing and irresponsible persons." See also, on this point, *State* v. *Moore,* 113 N. C. 697. What was said in those cases applies with much force to this Territory. For many years past the successive governments of these Islands have spent, and the present government is now spending, large sums of money for the purpose of attracting hither desirable immigrants of the laboring and agricultural class. The material welfare and progress of this Territory require an adequate supply of labor. Such supply can be obtained only from distant countries at heavy expense to our taxpayers. The immigrants, being generally impecunious and sometimes very ignorant, finding themselves among strangers in a strange country, are peculiarly susceptible to such glittering representations as may be, and perhaps often are, held out by irresponsible labor agents. The legislature was cognizant of these conditions, and being so, was fully justified in taking any lawful steps in its power to protect the community, the people in it, and our local indus-

In Re Craig, 20 Haw. 483.

tries, from the incursions of emigrant agents. These agents oftentimes are not prepared, and sometimes do not intend, to fulfill the promises which they make to those whom they persuade to leave their present employment and go elsewhere. The dictates of self-preservation as well as a proper regard for the welfare of unwary and easily led persons of the laboring class would suffice to impel the legislature to defensive action. Without recapitulating the various requirements of section 2 of Act 48 which are imposed as prerequisites to the obtaining of a license, we hold that they are reasonable requirements and within the discretion of the legislature to prescribe.

Counsel for the petitioner contend that this statute was "not intended as a police enactment for regulation, but was in reality passed for the purpose of preventing free egress of laborers out of the Territory." This contention cannot be sustained. The statute places no impediments upon the emigration of laborers. The conditions briefly referred to above, furnish, in our judgment, sufficient basis for the regulation of the business in question. Furthermore, granting that the business is one which may lawfully be taxed or regulated, the motive that prompted the legislature to act is beyond the reach of the courts. *McCray* v. *United States,* 195 U. S. 27, 54; *Oceanic Navigation Co.* v. *Stranahan,* 214 U. S. 320, 340.

As to the point that the statute is in conflict with the interstate commerce clause of the Constitution. The case of *Williams* v. *Fears* effectually disposes of this contention. The Supreme Court there pointed out the distinction between interstate commerce and the mere incidents which may attend the carrying on of such commerce, and said, "The imposition of this tax falls within the distinction stated. These labor contracts were not in themselves subjects of traffic between the States, nor was the business of hiring laborers so immediately connected with interstate transportation or interstate traffic that it could be correctly said that those who followed it were engaged in interstate commerce, or that the tax on that occupation constituted a burden on such commerce" (179 U. S. 278).

As to the points that, for the reasons urged as above stated, the statute conflicts with the Fifth and Fourteenth Amendments of the Constitution.     That there is sound ground for discrim-inating between the business of soliciting and hiring laborers to leave the Territory, and to work in the Territory, was pointed out in the case of *State* v. *Napier* where the court said, "Nor is the statute discriminating in any unlawful sense, by requiring a license for such business when the labor is to be performed out of the state, and not requiring a license when the labor is to be performed within the state.     The business which seeks to induce laborers to leave the state and the business which pro-motes the employment of laborers within the state are so differ-ent in their tendencies for good or evil to general interests as to justify a different classification and treatment with respect to them" (41 S. E. 16).     In *Williams* v. *Fears* the court said, "The point is chiefly rested on the ground that inasmuch as the business of hiring persons to labor within the State is not sub-jected to a like tax, the equal protection of the laws secured by the Fourteenth Amendment is thereby denied. *   *   *   We are unable to say that such a discrimination, if it existed, did not rest on reasonable grounds, and was not within the discre-tion of the state legislature" (179 U. S. 675, 676).

In *Louisville etc. R. Co.* v. *Melton,* 218 U. S. 36, 52, the court said, "As the power to classify is not taken away by the operation of the equal protection of the law clause, a wide scope of legislative discretion may be exerted in classifying without conflicting with the constitutional prohibition."     And in *Heath & Miligan Co.* v. *Worst,* 207 U. S. 338, 355, it was said that, "Legislation which regulates business may well make distinc-tions depend on the degrees of evil."

Section 1418c, of the Revised Laws provides that "Every person, firm or corporation conducting an employment or in-telligence office or advertising as an employment or intelligence agent shall pay an annual license fee of twenty-five dollars." Petitioner's counsel assume that holders of licenses issued un-

der that section "are legally authorized to carry on the same business as that defined under Sec. 1, of said Act 48," and then complain of the discrimination. If there is any warrant for the assumption one might have supposed that the petitioner would have obtained a license under that section. But it is obvious that the legislature did not regard the business of "emigrant agent" as being the same thing as that of an "employment or intelligence agent." The difference is that between the hiring of laborers to leave the Territory and the hiring of such to work within the Territory.

As above shown, the nature of the business of an emigrant agent, especially in view of the labor conditions as they exist in this Territory, clearly justifies proper regulation. We cannot say that any of the provisions of Act 48 following section 2 are unreasonable regulations or are otherwise invalid in so far as the objections which have been raised to them require to be considered and decided in this case. Liberty of contract is not universal, but must be understood to be subject to the exercise of the police power even though it may result occasionally in pecuniary injury to the persons affected. In *Gundling* v. *Chicago* the court said, "Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference" (177 U. S. 188). See also *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238; *Fischer* v. *St. Louis,* 194 U. S. 361; *McLean* v. *Arkansas,* 211 U. S. 539; *Williams*

In Re Craig, 20 Haw. 483.

v. *Arkansas,* 217 U. S. 79; *Engel* v. *O'Malley,* 31 Sup. Ct. Rep. 190.

In considering the questions presented in connection with the Fourteenth Amendment we are not to be understood as deciding that the Amendment applies to the Territories. Doubt as to that was expressed by this court in *Robertson* v. *Pratt,* 13 Haw. 590, 598. In the case at bar the question has not been raised or discussed.

From the views herein expressed it results that the writ must be dismissed and the petitioner remanded into the custody of the respondent. An order to this effect will be made on presentation.

*E. M. Watson* and *R. W. Breckons* for the petitioner.

*Kinney, Ballou, Prosser & Anderson* and *J. W. Cathcart* for the respondent.

## CONCURRING OPINION OF PERRY, J.

Of the respondent's contentions that as the petitioner does not claim to have paid or tendered the amount of the license fee required by section 2 of Act 48 he is not in a position to raise any question other than that of the validity of the single requirement as to the fee, and that in any event because the petitioner has not obtained a license under the statute he should not be allowed to raise any question as to the validity of any of the conditions or restrictions imposed by the statute upon licensees, as well as of his further contention that, even though the provision of section 2 requiring a bond should be held or assumed to be invalid, the remaining provisions of section 2 are valid and may stand by themselves, it is sufficient to say that it is unnecessary to pass upon them, for, assuming, in favor of the petitioner, that the provisions of section 2 are not severable and that neither the petitioner's failure to pay or tender the license fee nor his failure to obtain the license operates in the manner contended for by the respondent, nevertheless the conclusion of the court is that the warrant and complaint state

In Re Craig, 20 Haw. 483.

a valid cause of imprisonment and that the petitioner must be remanded to the custody of the respondent. I do not, therefore, express or intimate an opinion concerning the merits of any of respondent's contentions just recited or of the point presented by petitioner by way of reply that section 2 requires a bond securing compliance in all respects with the subsequent provisions of the act, that the unconstitutionality of those provisions would not be available as a defense to an action on the bond (citing *Territory* v. *Tue Bun,* 20 Haw. 267), and that therefore he is now in a position to question the validity of all the provisions following section 2. Nor do I think that the mere exclusion of the evidence offered by the petitioner to prove that he held an emigrant agent's license under the act of 1905 requires or justifies any different method of disposition of the constitutional questions argued than would otherwise be accorded the petitioner. The ruling excluding the evidence was, in my opinion, correct. If the petitioner desired to avail himself of the alleged fact that he held a license, or of the defense that, holding a license under the earlier act, he was under no obligation to pay the fee prescribed by Act 48, he should have chosen some method of procedure, as, for example, a trial and an appeal, free from the limitations of habeas corpus. His position, and only possible position, upon this writ of habeas corpus is that, admitting it to be true as alleged in the warrant that he has no license, Act 48 does not validly require him to obtain one and that therefore he can do the acts charged without a license under that act. It is not as though he were endeavoring on mandamus to compel the issuance of a license and the treasurer were resisting on the ground that the license fee had not been paid. For the purposes of this case it is sufficient to assume that the petitioner's failure to obtain a license, under either law, does not of itself debar him of the right to present the objections of unconstitutionality which he has presented and then to hold, as we do, that all the objections which he is not

In Re Craig, 20 Haw. 483.

for other reasons precluded from advancing are unfounded. See *Fischer* v. *St. Louis,* 194 U. S. 361, 372.

In all other respects I concur in the reasoning and conclusion of the majority.