IN THE MATTER OF THE APPLICATION OF JOSEPH KALANA FOR A WRIT OF MANDAMUS.

ARGUED APRIL 13, 1914.                              DECIDED MAY 6, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

TERRITORIES—*legislative powers under Organic Act.*

By section 55 of the Organic Act the legislature of this Territory was vested with the power of taxation with all the completeness and effectiveness with which that power is vested in and exercised by the legislature of any of the States, and also the right to legislate in exercise of the police power.—*In re Craig*, 20 Haw. 483.

CONSTITUTIONAL LAW—*taxation.*

Act 99, Session Laws of 1913, was enacted by the legislature of the Territory in the exercise of the power of taxation, and so far as the petitioner in this case has questioned its validity it is held to be not unconstitutional.

SAME—*licenses, payment in full of all taxes as condition precedent to issuing.*

That portion of Act 99, Session Laws of 1913, which act amends section 1323 of the Revised Laws, as amended, providing "that no license shall be so issued until the applicant therefor shall have filed with the treasurer of the county or city and county a certificate showing the payment in full of all taxes due from said applicant on the date of said application," does not impose any penalty for the past delinquency nor attempt to punish the applicant for any past offense, hence the same is not invalid as being in conflict with the provision of the Federal Constitution prohibiting the passage of *ex post facto* laws.

In re Kalana, 22 Haw. 96.

STATUTES—*construction of—proviso.*

> It is not a universal rule that a proviso applies only to the para-
> graph or clause immediately preceding it.  Its application must be
> gathered from the context and a comparison of all the provisions
> relating to the subject-matter.  The manifest intent of the legis-
> lature must be given effect even though the statute should be
> thereby invalidated.  Because the act may be invalid if meaning
> what it says does not make the words of the act either dubious
> or ambiguous.  In this case held, that the manifest intent of the
> legislature, as expressed in plain and unambiguous language, is to
> require all applicants for licenses, whether to do business in the
> county or city and county or throughout the Territory, to pay all
> taxes due, including those delinquent, as a condition precedent to
> the issuing of the license.

OPINION OF THE COURT BY WATSON, J.

This is an application by one Joseph Kalana, a hackdriver,
for a writ of mandamus directing C. J. McCarthy, treasurer
of the city and county of Honolulu, to issue to him a license
to drive any licensed vehicle in the city and county of Honolulu.
The applicant alleges that he is a citizen of the United States
and of the Territory of Hawaii; that on November 17, 1913,
he made application to C. J. McCarthy, treasurer of the city
and county of Honolulu, for a license to drive any licensed
vehicle in said city and county for the period beginning on the
date of said application and ending with June 30, 1914, at the
same time tendering to the said treasurer the sum of one dollar
as and for the fee for said license, the sum of fifty cents for the
stamp thereon and presenting a certificate of competency as
required by law; that at the time of the making of the said
application the applicant had paid in full his taxes for the year
1913 but was owing taxes for the years 1904 to 1912 inclusive
in the total sum of $55; that the said treasurer arbitrarily and
in violation of law refused to issue such license giving as his
reason therefor the failure of the applicant to file with him,
said treasurer, a certificate showing the payment in full of all

taxes due from said applicant for the said years, including the year 1913.

An alternative writ was allowed directing the treasurer to issue the license or to show cause to the contrary. The treasurer demurred to the alternative writ on the grounds that the facts stated in said writ do not entitle the relator to the relief demanded, in that the relator shows in the said writ that he had not paid in full all taxes due from him on the date of the said application, nor had said relator at the time of the said application filed with said treasurer a certificate showing the payment in full of all taxes due from said relator on the date of said application, both of which acts are conditions precedent to the issuance of any such license, as provided in Act 99 of the Session Laws of 1913. The demurrer was sustained and a decree entered discharging the alternative writ and dismissing the petition. From this decree the petitioner appeals to this court.

The statute under which the license is required (Act 13, Laws of 1907) is amendatory of section 97, chapter 64, Laws of 1896, Revised Laws, Sec. 1412. Its first section is as follows:

"Section 1412. Fees to Carry Freight; Drive. The annual fee for a license to carry freight or baggage for hire or compensation on any dray, cart, wagon or other vehicle other than a hand cart, shall be two and a half dollars for each vehicle so used.

"The annual fee for a license to drive any licensed vehicle shall be one dollar and such license shall permit the licensee to drive any vehicle licensed under this section."

Act 64, Laws of 1896, is a comprehensive act amending, adding to and consolidating nearly all the former laws relating to licenses and repealing such former laws. It is reenacted as chapter 102 of the Revised Laws, sections 1321 to 1418, inclusive, under the title "Licenses." Sections 1414 and 1415 (Secs. 99 and 100, Act 64, Laws of 1896) read as follows:

"Sec. 1414. Certificate from sheriff. The high sheriff or

a sheriff, or deputy high sheriff or deputy sheriff, or an inspector appointed by the high sheriff for such purpose, shall, before any license is issued for any passenger vehicle, inspect the vehicle for which a license is requested, and the harness and the animals to be used therewith, and if he find the same to be in good serviceable condition he shall deliver to the applicant therefor, a certificate setting forth such fact, and the capacity of the vehicle. Such officer shall also examine any applicant for a driver's license, and if he find such applicant to be a competent driver he shall give him a certificate to that effect. No license shall be issued to any driver or for any passenger vehicle until the receipt by the treasurer of such certificate."

"Sec. 1415. Number on vehicle; badge. The owner of a licensed vehicle shall continuously exhibit in a conspicuous place on every such vehicle, the number of the license issued for such vehicle. Every licensed driver shall wear, while employed, a badge which shall be supplied by the treasurer at cost, showing his number."

By section 1418, Revised Laws (Sec. 103, Act 64, Laws of 1896), it is provided, *inter alia,* under the heading "Penalties," that "Any person * * * who shall drive a licensed vehicle without a driver's license;

"Or who shall violate or fail to observe any of the requirements of this chapter, or the rules made by the treasurer under this chapter, shall be fined not more than twenty-five dollars for each such violation, and the license of any such licensed vehicle or driver may, in the discretion of the court, be canceled."

Act 99, Laws of 1913, which amends section 1323, Revised Laws as amended, provides as follows:

"Section 1323. Signed by whom. Every license shall be signed by the treasurer of the County or City and County, within which the license is to be operative, and impressed with the seal of his office. Such seal shall be as determined by the board of supervisors. Provided, that any license which authorizes the licensee to do business throughout the Territory shall be signed by the treasurer of the County or City and County in which the principal office of the licensee is situated; and provided further, that no license shall be so issued until the applicant therefor

shall have filed with the treasurer of the County or City and County a certificate showing the payment in full of all taxes due from said applicant on the date of said application."

The only questions brought up by this appeal relate to the validity and construction of the last proviso as contained in Act 99 of the Laws of 1913, "That no license shall be so issued until the applicant therefor shall have filed with the treasurer of the County or City and County a certificate showing the payment in full of all the taxes due from said applicant on the date of said application." It is not contended by the treasurer, and we think could not be successfully contended, that there is any discretionary power vested in him to refuse to issue a driver's license to an applicant who has complied with the valid terms and conditions imposed by law in that behalf (*Tai Kee v. King,* 11 Haw. 57). Respondent's sole defense in this proceeding is based on the proviso, above quoted, as contained in Act 99 of the Laws of 1913,—that the applicant has not filed with him a certificate showing the payment in full of all taxes due from applicant on the date of said application; the failure of the applicant to file with him such certificate, and the affirmative showing as contained in the petition and alternative writ that on the date of said application there was due from said applicant taxes for the ten years preceding the year 1913 in the sum of $55. Petitioner contends (1) that the said proviso is unconstitutional and void, when applied to him, as depriving him of his liberty and property without due process of law, contrary to the provisions of the fifth and fourteenth amendments to the Constitution of the United States; (2) that the said proviso applies only in a case where the application is for a license to do business throughout the Territory, and therefore has no application in this case, as his application was only for a license to drive a hack in the city and county of Honolulu; (3) that the taxes, the payment of which is required to be shown by the certificate provided for in said proviso, are only

those that became due, or to become due, after the taking effect of the act.

Respondent disputes all of these contentions and claims that said proviso in said act constitutes a valid exercise of the police power by the territorial legislature and that requiring the payment of all taxes due from the applicant at the date of said application as a condition precedent to the issuing of the license is a proper and reasonable regulation in the exercise of such police power.

There can be no question but that as originally enacted the statute requiring the licensing of drivers and subjecting them to certain reasonable requirements therein imposed (Act 64, Laws of 1896) was in the exercise of the police power. *Sakata v. High Sheriff,* 16 Haw. 181. But in our opinion Act 99, Laws of 1913, must, to be sustained at all, stand as an exercise of the power of the legislature to enforce the payment to the Territory of the taxes legally due it, in other words, as an exercise of the power of taxation.

"Restriction of rights. Penalties imposed on delinquent taxpayers not infrequently take the form of restrictions upon the exercise of rights * * *. Such statutes are sustainable only as revenue measures" etc. 27 A. & E. Ency. L. 2 ed. 780, 781. See also *Lott* v. *Dysart,* 45 Ga. 356; *Frieszleben* v. *Shallcross,* 8 L. R. A. 337, 353.

We cannot assent to the claim, as urged by counsel for the respondent, that said proviso is a valid enactment by the legislature of the Territory in the exercise of its police power as prescribing a reasonable qualification for persons engaged in any business or occupation which requires a license for its prosecution, in this case a hackdriver, within the rule laid down in the case of *Hawker* v. *New York,* 170 U. S. 189, where a statute prescribing the qualifications of one engaged in the practice of medicine was upheld as being within the acknowledged reach of the police power of the State. In that case the court, speaking through Mr. Justice Brewer, said (p. 195): "We do not

mean to say that it (the State) has an arbitrary power in the matter, or that it can make a conclusive test of that which has no relation to character, but it may take whatever, according to the experience of mankind, reasonably tends to prove the fact and make it a test." Again (on p. 196): "When the legislature declares that whoever has violated the criminal laws of the State shall be lacking in good moral character it is not laying down an arbitrary or fanciful rule—one having no relation to the subject-matter, but it is only appealing to a well recognized fact of human experience."

"It is within the power of the legislature to prescribe a rule of general application based upon a state of things which is ordinarily evidence of the ultimate fact sought to be established." *Hawker* case, *supra*. In this case the ultimate fact sought to be established (so far as the police power is concerned) is whether or not the applicant is qualified and competent to drive a hack in the city and county of Honolulu.

In the case of *Sakata* v. *High Sheriff*, *supra*, wherein it was held that the high sheriff could not refuse a certificate of competency to an applicant for a driver's license on the ground of the applicant's imperfect knowledge and understanding of the English language, the court, speaking through Chief Justice Frear, said: "It needs no argument to show that one may be a competent driver without having any knowledge whatever of the English language." And in this case we are unable to see wherein the nonpayment of taxes can affect the competency or qualifications of the applicant, or what relation this requirement as to the payment of taxes can have to the competency of the applicant as a hackdriver. It is a well recognized principle of law that there must be some obvious and real connection between the actual provisions of police measures and their assumed purpose. The police power is limited to enactments which have reference to the purposes to be accomplished. For the reasons given we think that the proviso as contained in Act 99, Laws of

1913, cannot be sustained as a valid and reasonable regulation in the exercise of the police power of the legislature.

However that may be, and whether enacted by the legislature in the purported exercise of its police power, or in the exercise of its power of taxation, as in our opinion it was, the only material inquiry with which this court is concerned is, might the proviso have been legally enacted in the exercise of either of said powers or in the exercise of any other valid power to said territorial legislature appertaining. The present chief justice, speaking for the court, in *In re Craig,* 20 Haw. 483, 490, said: "The Congress of the United States, through the Organic Act (Sec. 55), empowered the legislature of this Territory to enact 'all rightful subjects of legislation not inconsistent with the Constitution and Laws of the United States locally applicable.' The power of taxation, therein included, was conferred upon the legislature with all the completeness and effectiveness with which that power is vested in and exercised by the legislature of any of the States. *Peacock* v. *Pratt,* 121 Fed. 772. So also was the right to legislate in exercise of the police power conferred. *Territory* v. *Guyott,* 9 Mont. 46. * * * There is no good reason why a single statute should not include the exercise of both the power of taxation and the police power." We proceed then to inquire, is the proviso in Act 99 complained of inconsistent with the Constitution or any law of the United States locally applicable?

Under the first point raised by the petitioner, that the proviso is unconstitutional as being in conflict with the fifth and fourteenth amendments, counsel for petitioner urge that if said proviso is construed as requiring the payment of taxes which became due before the taking effect of the act, to wit, the 23d day of April, 1913, the same is *ex post facto* and void and deprives the petitioner of his liberty and property without due process of law within the rule laid down in *Cummings* v. *Missouri,* 4 Wall. 277. (The validity of the delinquent taxes for

the years 1904 to 1912, inclusive, is not questioned by petitioner, nor is the fact that the same were legally assessed and are due and owing. But, on the contrary, it is affirmatively alleged by him in his petition and in the alternative writ that taxes are due and owing by him for such years, amounting to $55.) In other words, instead of contending that the proviso as contained in the act is *ex post facto* within the inhibition of the Federal Constitution, which, if true, would in itself invalidate the act in so far as said proviso is concerned, counsel for petitioner assume it to be true that the same is *ex post facto* and then adopt this conclusion as a premise for the ultimate contention advanced by them that said proviso deprives him of his liberty and property without due process of law.

Under this objection, then, assuming that the act does require the payment of all taxes, including those delinquent, the only question presented for our consideration is whether or not this proviso, "that no license shall be so issued until the applicant therefor shall have filed with the treasurer of the County or City and County a certificate showing the payment in full of all taxes due from said applicant on the date of said application," is *ex post facto* within the meaning of the prohibition as contained in the Constitution of the United States.

It is argued that the proviso referred to imposes a penalty for past delinquencies and is therefore *ex post facto* in its operation. The language used does not impose any penalty for the past delinquency nor is the granting or refusal of the license in any way made to depend on the payment of taxes by the applicant as they fall due. As was said by this court in *Keola* v. *Parker,* 21 Haw. 597, 601, where it was held that the statute of limitations does not run against the Territory in an action to recover taxes, "the obligation of the citizen to pay his taxes is regarded as a continuing public duty which is discharged only by their payment." This statute does not attempt to punish the applicant for any past offense (*Reetz* v. *Michigan,* 188 U. S. 505, 510), and in its most extreme view can only be said to

require that one who applies for a license after the taking effect of the act shall discharge his existing obligation to the Territory by paying all taxes due as a condition precedent to the issuing of the license. Our laws provide for the payment of back taxes at any time and it is clear from the language of the proviso complained of that the applicant is given until the time of the filing of his application within which to pay all taxes due from him on that date and thus entitle himself to the certificate required by the act. In this case the application for the license was made on November 17, 1913, the act having taken effect more than six months prior thereto, to wit, on April 23, 1913, and during all of that time, so far as any legal reason to the contrary existed, he might have paid the taxes affirmatively alleged by him to have been due, for the years 1904-1912, inclusive, amounting to the sum of $55. Under the authority of *Macon and Augusta R. Co.* v. *Little,* 45 Ga. 370, 383, it may well be doubted whether the operation of the proviso is retrospective. In that case this same argument was advanced with respect to an act of the legislature of Georgia, known as the "Relief Act," under the terms of which no recovery in the courts of the State could be had upon a debt until the plaintiff made it clearly to appear that all legal taxes upon the debt "have been duly paid for each year since the making or implying of the debt," etc. The provisions of the act are substantially set forth in the opinion, but appear more specifically in the case of *Lott* v. *Dysart,* also reported in 45 Ga. on page 356.

In the case first referred to, *Macon and Augusta R. Co.* v. *Little,* on pages 382, 383, the court says:

"It is also said that they (the first four sections of the act) impose a penalty for past delinquencies, and are, therefore, *ex post facto* in their operation. The argument is, that the first section forbids the plaintiff to have a verdict or judgment in his favor until he has made it clearly to appear that all legal taxes upon the debt 'have been duly paid for each year since the making or implying of the debt,' etc., and that the second section requires him to file an affidavit that all legal taxes 'have been

duly paid' 'for each year since the making of the debt,' etc., and that this affixes an *ex post facto* penalty for the non-payment of taxes, besides impairing the obligation of the contract, the words, 'duly paid for each year,' meaning paid each year as they fell due. If the legislature intended this, they have signally failed to express such intention in the language used. Our laws provide for the payment of back taxes at any time, and taxes due for many years may now be paid 'for each year,' and when paid, they are 'duly,' or properly, paid under the law. Doubtless many legislators may have voted for the Act under the impression that it required a party plaintiff to swear that he had each year paid the taxes on his debt as they fell due. Indeed, the Act seems to have been skillfully drawn with a view of creating such an impression upon the minds of a sufficient number of advocates of relief to insure its passage. It is equally clear that the language used does not require him to do any such thing, but gives him six months after the passage of the Act within which to pay his taxes and file his affidavit, if his suit was pending at the time of its passage, and up to the commencement of his suit, if it is brought after the passage of the Act. *Hence the operation of the first three sections are not retroactive.*"

However that may be, there is a clear distinction between legislation which is retrospective and that which is *ex post facto* in the meaning of the prohibition as contained in the Federal Constitution. Retrospective laws, however unjust they may be, are not prohibited by the Constitution, while the former (*ex post facto* laws) are. *Ex parte Garland,* 4 Wall. 333, 391, citing *Calder* v. *Bull,* 3 Dall. 386; *Satterlee* v. *Matthewson,* 2 Pet. 380, 413.

Since the case of *Calder* v. *Bull, supra,* the Federal Supreme Court has uniformly held that the provision of the Constitution prohibiting the passage of *ex post facto* laws applies only to legislation concerning crimes. *Re Sawyer,* 124 U. S. 200, 219; Cooley's Const. Lim., 7 ed. 373, 374. In the case of *State* v. *Jersey City,* 37 N. J. L. 39, where the question was presented as to whether penalties for nonpayment of taxes might be revived by subsequent legislation, the court, after holding such

statute void as being in conflict with another and entirely different clause of the state constitution, in discussing the point as-to whether or not the statute in question was *ex post facto,* said (p. 43) : "The Supreme Court of the United States has restricted the term *ex post facto* to criminal cases and to what may be called offenses against the law. This limitation was adopted in *Calder* v. *Bull,* 3 Dall. 386, and after being repeatedly recognized was adhered to in the Missouri cases reported in 4 Wall. 277. The failure to pay a tax is not a crime or strictly an offense against the law but a mere delinquency or omission. Being unable to find any case which enlarges the interpretation of this clause of the constitution, I express no opinion upon it."

So that, even if it be conceded that the proviso contained in Act 99, Laws of 1913, is retrospective in its effect, there is no constitutional provision nor any act of Congress which prohibits the legislature of the Territory from enacting such legislation. Cooley's Const. Lim., 7 ed. 373. The only restriction upon the power of the legislature of this Territory to enact all rightful subjects of legislation is that such legislation shall not be inconsistent with the Constitution or laws of the United States locally applicable. Organic Act, Sec. 55 ; *Re Craig, supra.* It is true that by section 5 of the Revised Laws it is provided, "No law shall have any retrospective operation." This was in the Hawaiian constitution also, but it was omitted from the Organic Act although inserted in the bill as introduced in Congress. Never having been expressly repealed the enactment still remains upon our statute books, but being a statutory direction only it could not operate on or restrain any subsequent legislative enactment which, to the extent that it might conflict with the provisions of said section 5, would have the effect of impliedly repealing such law (Ch. 5, R. L.). Without stopping further to discuss whether or not the proviso complained of in Act 99, S. L. 1913, may be considered as retrospective in its operation, we hold that said proviso is not *ex post facto* within the provi-

sion of the Federal Constitution prohibiting the passage of *ex post facto* laws.

The two remaining points raised by petitioner relate to the construction of the proviso complained of (a) that said proviso applies only in a case where the application is for a license to do business throughout the Territory; (b) that it is to be construed prospectively, that is, as requiring only the payment of such taxes as become due after the taking effect of the act. Counsel for petitioner contend that the act recognizes two forms or kinds of licenses, one to do business in the county or city and county only and the other to do business throughout the Territory. We think this is plain from a reading of the act. But they then proceed to argue that the proviso complained of relates only to the preceding clause providing for a license to do business throughout the Territory and has no application to a license, such as was applied for by petitioner, to do business (or drive a hack) in the city and county of Honolulu only. The first sentence of the act provides that *"every* license shall be signed by the treasurer of the county or city and county," etc., this general provision relating both to licenses to do business in the county or city and county and also to the territorial licenses. There is nothing in the language of the proviso to indicate the intent of the legislature that it should be restricted in its application to those applying for licenses to do business throughout the Territory, although this restriction, had it been the legislative intent, might easily have been made to appear. "In *Minis* v. *U. S.,* 15 Pet. 423, Judge Story says: 'The office of a proviso generally is either to except something from the enacting clause or to qualify or restrain its generalities or to exclude some possible ground of misinterpretation of it as extending to cases not intended by the legislature to be brought within its purview.' " *Cooper* v. *Island Realty Co.,* 16 Haw. 98. "It is not a universal rule that a proviso applies only to the paragraph or clause immediately preceding it." *Cooper* v. *Island Realty Co., supra,* 99.

In re Kalana, 22 Haw. 96.

"Though the proviso is found in a section and immediately follows a particular phrase, its effect is not necessarily limited and restricted to the same section. * * * When from the context, and a comparison of all the provisions relating to the same subject matter, it is manifest that the object and intent were to give the proviso a scope extending beyond the section, and effect beyond the phrase immediately preceding, it will be construed as restraining or qualifying preceding sections relating to the subject matter of the proviso, or as tantamount to an enactment in a separate section, without regard to its position and connection." *Cooper* v. *Realty Co., supra,* 100, quoting from *Wartensleben* v. *Haithcock,* 1 So. 38, 40.

So it would seem that a proviso is not necessarily restricted to the immediately preceding clause or phrase nor even to the same section and that its application must be gathered from the context and a comparison of all the provisions relating to the subject matter.

In this case we have held that Act 99, Laws of 1913, must be regarded as an exercise of the power of the legislature to enforce the payment to the Territory of the taxes legally due it and there is nothing in the language of the act or in its object, as we have interpreted it, to indicate that the proviso was not intended to operate with respect to county licenses as well as territorial licenses. It is obvious that the object of the legislature was to reach delinquent taxes,—this whether the same were due from an applicant for a county license or a territorial license. The collection of outstanding taxes was the end sought to be attained.

"Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and the necessity of its enactment, the defects or evils in the former law and the remedy provided by the new one, and the statute should be given that construction which is best calculated to advance its object * * * by securing the benefits intended." 36 Cyc. 1110, 1111.

"The statute itself furnishes the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all of its parts may be

brought into harmony therewith, that intent will prevail without resorting to other aids of construction." 2 Lewis' Suth. Stat. Const., Sec. 348.

Without expressly so deciding, we have already intimated that in our opinion the proviso complained of is not retroactive. We recognize the general rule to be that the retrospective operation of statutes is not favored. *Un. Pac. R. R.* v. *Laramie Stock-Yards,* 231 U. S. 190. But where, as in this case, the language of the statute is clear and unambiguous, the manifest intention of the legislature must be given effect, even though the statute should be thereby invalidated. There is no room for the construction contended for by petitioner and such an interpretation would be nothing short of judicial legislation. As was said by Mr. Justice Wilder, speaking for the court, in *Territory* v. *McDonald,* 17 Haw. 391: "But before this rule of construction can be invoked the words must be dubious. See Lewis' Sutherland Stat. Con. 367. In this case they are not either dubious or ambiguous. Because the amending act may be invalid if meaning what it says does not make the words of the act either dubious or ambiguous. Consequently, there is no reason to apply the statutory rule of construction referred to."

We are of the opinion that under the plain language of the act the proviso applies to county licenses as well as territorial licenses and that all taxes due, including those delinquent at the time of the passage of the act, must be paid before the license can issue.

During the course of these proceedings other questions have been incidentally referred to or touched upon, but none of them are relied on by appellant or discussed by him in his brief or oral argument, and in arriving at our conclusion that the decree herein must be affirmed, we have decided only those questions which were properly before us.

For the reasons stated the decree appealed from sustaining

In re Kalana, 22 Haw. 96.

the respondent's demurrer, dismissing the petition and discharging the alternative writ is affirmed.

*N. W. Aluli (E. K. Aiu* with him on the brief) for petitioner.

*P. L. Weaver, Deputy City and County Attorney,* for respondent.

*L. P. Scott, Deputy Attorney General,* filed a brief on behalf of the Territory.