### STATE v. NAPIER.

1. CRIMINAL LAW—HIRING LABORERS—SOLICITING EMIGRANTS.—AN INDICTMENT charging a defendant on a day certain with unlawfully hiring laborers and soliciting emigrants to labor without the State without having first obtained a license therefor, states a crime under the act with sufficient definiteness, without specifying specific acts of hiring or soliciting, as it charges sufficiently a continuation or succession of acts, and comes under the exception to the rule of pleading, where the offense consists of one single act; but proof of one act of hiring or soliciting would not warrant a conviction thereunder, unless it was under circumstances which raised the presumption of the carrying on of the unlawful business.

2. IBID.—IBID.—IBID.—CONSTITUTION.—The emigrant agents act is not violative of art. I., sec. 5, of Constitution of this State, nor of art. XIV., sec. 1, of Constitution of United States, as it does not abridge the privileges of the citizen, nor is it discriminatory; nor art. I., sec. 8, of Constitution of United States, as the business of hiring laborers and soliciting emigrants is not an "article of commerce;" nor art. X., sec. 1, of Constitution of this State, as there is no violation of the principle of the uniformity of taxation.

Before KLUGH, J., April, 1900. Affirmed.

Indictment against J. W. Napier, under the following act of 1898:

"An act to prohibit emigrant agents from plying their

vocation within this State without first obtaining a license therefor, and for other purposes.

"Section 1. Be it enacted by the General Assembly of the State of South Carolina, That from and after the approval of this act, no person shall carry on the business of an emigrant agent in this State without having first obtained a license therefor from the State treasurer.

"Sec. 2. That the term emigrant agent, as contemplated in this act, shall be construed to mean any person engaged in hiring laborers or soliciting emigrants in this State, to be employed beyond the limits of the same.

"Sec. 3. That any person shall be entitled to a license, which shall be good for one year, upon payment into the State treasury, for the use of the State, of $500, in each county in which he operates or solicits emigrants, for each year so engaged.

"Sec. 4. That any person doing the business of an emigrant agent without having first obtained such license, shall be guilty of a misdemeanor, and upon conviction shall be punished by fine, not less than $500 and not more than $5,000, or may be imprisoned in the county jail not less than four months, or confined in the State prison, at hard labor, not exceeding two years, for each and every offense, within the discretion of the Court.

"Sec. 5. That all acts and parts of acts inconsistent with this act be, and are hereby, repealed." 22 Stat., 813

From conviction and sentence, defendant appeals.

*Messrs. T. I. Rogers* and *J. H. Hudson,* for appellant, cite: *This act violates art. I., sec. 5, and art. X., sec. 1, of Con. of S. C., and art. I., sec. 8, art. IV., sec. 2, and art. XIV., sec. 1, of U. S.:* 71 Ala., 499; Cool. Con. Lim., 342; 1 Bl. Com., 134; Hurd. Hab. Corp., 143; 12 Wall., 418; 7 How., 283; 6 Wall, 35; Rorer Int. Law, 315; 92 U. S., 259, 275; 27 Vt., 149; 67 Ala., 26; 50 Ala., 127; 52 Ala., 19; 16 Wall., 479; 15 Wall., 264; 65 Ala., 628; 6 Wheat., 315; 68 Ala., 303; 65

Ala., 193; 12 Wheat., 419; 91 U. S., 275; 7 How., 283; 6 Wall., 35; 30 Ala., 461; 103 U. S., 344; 67 Ala., 73; 18 S. E. R., 342; 10 Rich. L., 373.

*Mr. Solicitor Johnson,* contra, cites: *General rules as to the statement of offenses:* 1 Arch., p. 265; 3 McC., 193; 2 Bail., 149; 2 Murphey, 186; 1 Arch. Cr. Pr. & Pl., p. 266; 4 Hill N. Y., 133; 20 Ala., 43; 2 Ia., 162; 13 Miss., 3; 3 Strob. L., 269; 1 N. & McC., 91; Crim. Code, 55; 1 Bail., 144, 379. *The act is not unconstitutional:* 179 U. S., 270.

Macrh 7, 1902. The opinion of the Court was delivered by

MR. JUSTICE JONES. The appellant was convicted and sentenced for violating the act, approved February 11th, 1898, known as the emigrant agents act. This appeal from said judgment raises two questions: (1) Whether the indictment should have been quashed for uncertainty in charging the offense, in failing to specify any act of hiring or soliciting a laborer or laborers to be employed beyond the limits of the State, and (2) Whether said act is constitutional.

1. The Circuit Court quashed the first count of the indictment, but refused to quash the second count, which is as follows: "And the jurors aforesaid, upon their oath aforesaid, do further present: That J. W. Napier, on the 20th day or December, in the year of our Lord 1899, with force and arms, at Bennettsville, in the county and State aforesaid, did unlawfully engage in hiring laborers and in soliciting emigrants in this State, to wit: in the State of South Carolina, and in the county of Marlborough, to be employed beyond the limits of this State—that is to say, which laborers and emigrants were then and there to be exported from this State for employment beyond the limits of this State; the said J. W. Napier then and there not having first obtained a license therefor and so to do from the State treasurer of the State of South Carolina; against the form of

the statute in such case made and provided and against the peace and dignity of the State." An indictment whether at common law or under a statute must state the offense with sufficient certainty and particularity to enable (1) the Court to properly perform its duty in ascertaining whether, if the facts stated be true, they constitute a criminal offense, in confining the testimony to the specific charge and in imposing the proper punishment in case of conviction; (2) that the defendant may know what he is called upon to answer and to properly prepare his defense, and (3) that an acquittal or conviction may be pleaded in a subsequent prosecution for the same offense. The Constitution, art I., sec. 18, requires that the accused shall "be fully informed of the nature and cause of accusation," and this must necessarily involve a particular statement of all the facts constituting the offense charged. Applying the rule requiring certainty in charging a criminal offense, it has been held in *State* v. *Steedman,* 8 Rich., 312, and other cases, that an indictment for retailing spirituous liquors was bad, for failing to specify any person to whom the sale was made or other identifying circumstances, and this same principle was recently applied by this Court in the cases of *State* v. *Jeffcoat,* 54 S. C., 196, and *State* v. *Couch,* 54 S. C., 286, which show that in an indictment under the dispensary act for selling intoxicating liquors, the name of the person to whom the sale is made should be specified. Likewise, in the case of *State* v. *Powell,* 10 Rich., 373, an indictment under the act requiring pedlers to obtain license was held bad, which simply charged, "that A. P., on &c. at &c., did sell and expose to sale divers goods, &c., the said A. P. then and there being a pedler, and not having obtained a lawful license, &c."—the defect being in failing to specify any person to whom the goods were sold or offered for sale, or other identifying circumstances. So in the case of *State* v. *Brunson,* 2 Bailey, 149, the Court in effect held that an indictment for violating public decency must set out the specific acts and circumstances of indecency. These authorities undoubtedly show the rule applicable

where the offense charged is completed by a single act; but there is an exception to the rule, "when the offense includes in its nature a succession or continuation of acts which do not necessarily belong to any particular period, but from the daily habit and character of the offense, as public nuisances, bawdy houses and the like, the indictment may so charge it, and any fact going to establish it anterior to the finding of the bill may be given in evidence, and consequently a conviction would be a good bar to another prosecution for a fact committed before the finding of the bill." The foregoing quotation is from *State* v. *McBride,* 4 McCord, *332, which cites 1 Chitty's Crim. Law, 189, 230. In Clark's Criminal Procedure, 161, the author says : "Some offenses, from their nature, form an exception to this rule. A person, for instance, may be charged generally with being a common barrator or a common scold, or a common seller of intoxicating liquors, or the keeper of a common bawdy or gaming house, or a common night walker or prostitute, &c. The indictment need not set out the particular acts, because the charges include in their nature a succession and continuation of acts which do not belong to any particular period, but from the daily habit and character of the individual offending. The State, however, may be required before trial to give the defendant notice of the particular instances that are meant to be proved." This last sentence is supported by the citation of 2 Hawk P. C., c. 25, s. 59; *Rex* v. *Mason, 2* Term R., 586; *Com.* v. *Pary,* 13 Pick (Mass.), 359; *Com.* v. *Davis,* 11 Rich. (Mass.), 434; *State* v. *Russell,* 14 R. I., 506. The author also cites our case of *State* v. *Chitty,* 1 Bailey, 379. In that case, a justice of the peace was indicted as a common barrator, and the indictment alleged in general terms that "divers quarrels, strifes, suits and controversies among the honest and quiet citizens of this State," he, the said defendant, "did move, procure, stir up and excite to the evil example, &c." In the case, it appears that conformably to the practice in relation to general indictments, the defendant was served with a notice in writing of the particular act

of barratry which would be relied on in behalf of the prosecution, and to these the evidence of the trial was confined. The Court considered the notice as not a part of the indictment, but as nothing more than a bill of particulars of the evidence intended to be offered on the trial, rendered necessary by the generality of the charge.

It is contended in this case that the indictment falls within the exception and not within the general rule, and the difficulty lies in determining in which class the offense charged should be placed. The offense made punishable by the statute in question is doing or carrying on the *business* of hiring laborers or soliciting emigrants in this State to be employed beyond the limits of the State, without a license. The statute affects a business or vocation rather than a specific act. The title is "to prohibit emigrant agents from *plying their vocation,* &c." The first section says, "no person shall *carry on the business* of an emigrant agent, &c." The second section defines emigrant agents to mean "any person *engaged* in hiring laborers or soliciting emigrants in this State to be employed beyond the limits of the State." The fourth section provides "that any person *doing the business* of an emigrant agent without first having obtained such license, shall be guilty, &c." The nature of the offense, it would seem, involves a succession or continuation of acts of hiring or soliciting sufficient to justify an inference that such acts were done in pursuit of the business or vocation of hiring or soliciting laborers, &c. Formerly in this State retailing without license was considered to be like keeping a tavern without license, and to require for its completion a succession of acts, as shown by the case of *State* v. *McBryde,* 4 McCord, 322; and in the case of *State* v. *Steedman,* Wardlaw, J., said: "Under that view, an indictment that the defendant from a day certain to a day certain, or on a day certain and divers others days, did retail certain spirituous liquors without license to divers persons, might be sufficiently definite, but the proof of a single act of retailing would not serve for conviction, unless it raised the presumption of other acts, so

5—63

many as to constitute the unlawful habit." The Court in that case then proceeds to show that since it is settled in this State that the offense of retailing without a license is made complete by a single act, and a conviction for one act of retailing does not bar a prosecution for another act preceding the finding of the indictment, it is indispensible to specify in the indictment the person to whom the sale was made. As the carrying on of a business or the plying of a vocation necessarily involves the idea of successive acts, continuity of habit, we do not think proof of a single act of hiring or soliciting a laborer to be employed beyond the State limit would serve for conviction of the statutory offense under consideration, unless it was under circumstances which would raise a presumption of other such acts, so many as constitute the unlawful business or vocation. This being our view of the nature of the offense under notice, we are of opinion that it falls within the exceptions to the general rule, and that in indictment therefor it is not essential to specify particular acts of hiring or soliciting, but that it is sufficient to state the offense in the terms of the statute defining it, as was done in this case.

The constitutionality of the act is assailed under art. I., sec. 5, and art. X., sec. 1, of the State Constitution, and under art. IV., sec. 2, and art. XIV., sec. 1, and art. I., sec. 8, of the Federal Constitution. Art. I., sec. 5, Constitution of South Carolina, reads as follows : "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the law." Art. XIV., sec. 1, of the Federal Constitution, is as follows : "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any

person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." It is contended that the act in question abridges the privileges of the citizen in restraining his right to make contracts of hiring, &c., and in restraining his right of egress from the State. But we fail to see wherein the act so operates, unless it be in a very remote and incidental way. The act, which is reported herewith, does not affect the right of any citizen to leave the State for labor elsewhere whenever he pleases, and to make such contract for his labor as he chooses. The statute, as already stated, affects only those who carry on the business of an emigrant agent, whose vocation is to hire laborers and solicit emigrants to be employed beyond the limits of the State. It is easy to see that the business is of such a nature that the legislature might well see fit to thus regulate it, not only for the protection of the agricultural and manufacturing interests of the State, but for the protection of the laborers themselves against the acts and solicitations of designing and irresponsible persons, who may ply such a vocation in order to levy contributions from the ignorant and allured laborers, and then not be found when the laborers, according to appointment, appear at the railroad station to take their departure with him to their fields of labor. Payment of the license fee and the issuance of the license by the proper authority, afford some guarantee or evidence of good faith in the conduct of such business.

Nor is the statute discrimmentary in any unlawful sense, by requiring a license for such business when the labor is to be performed out of the State, and not requiring a license when the labor is to be performed within the State. The business which seeks to induce laborers to leave the State and the business which promotes the employment of laborers within the State, are so different in their tendencies for good or evil to general interest, as to justify a different classification and treatment with respect to them. All persons falling within the class named in the statute are in all respects sub-

ject to the same requirements without any discrimination whatever.

The clause in the Federal Constitution relating to interstate commerce, art. I., sec. 8, is not violated by the statute in question. "Commerce with foreign nations and among the States, strictly considered, consists in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale and exchange of commodities." *Mobile Co.* v. *Kimball*, 102 U. S., 702. A statute is not obnoxious to this clause of the Federal Constitution which does not directly affect commerce as thus defined. The business of procuring contracts for personal labor to be performed out of the State is not a *commodity* of commerce, and any transportation of persons that might result from such contract is so remote and incidental as not to be deemed within the protection or meaning of the law of interstate commerce. The case of *Williams* v. *Fears*, 179 U. S., 270, 21 Sup. Ct. Rep., 128, affirming the judgment of the Supreme Court of Georgia, 35 S. E. Rep., 699, is conclusive on this point as well as all other questions raised under the Federal Constitution. In that case the Court (quoting from the syllabus in 21 Sup. Ct. Rep., 128) held.

"1. The imposition of a license tax upon emigrant agents by Georgia laws 1898, which leaves laborers free to make their own contracts, and restricts the business of inducing them to enter into labor contracts and to change their location only, by imposing a license tax upon it, is not in violation of the U. S. Con., 14 Amend., or U. S. Con., art. IV., sec. 2, as an abridgement of the privileges and immunities of citizens.

"2. A discrimination against persons engaged in the business of emigrant agents, hiring persons to labor outside the State, by a statute which imposes a license tax upon them, but not upon persons engaged in hiring laborers to work within the State, is not unconstitutional as a denial of the equal protection of the law.

"3. A burden on interstate commerce is not imposed by Georgia laws 1898, imposing a license tax on emigrant agents engaged in the business of hiring persons to labor outside the State."

The case of *Joseph* v. *Randolph*, 71 Ala., 499, 46 Am. Rep., 347, cited by appellant, held that the Alabama act 1879, amended 1880-81, which provided, "that no person, whether for himself or for other persons, shall be permitted to employ, engage, contract or in any way induce laborers to leave the counties of Dallas, Perry, * * * Montgomery * * * for the purpose of removing said laborers from this State, without first paying to each of said counties in which such persons shall so operate a license tax of $250, &c.," was unconstitutional, because it was an indirect tax upon the citizen's right of egress from the State, operating to hinder the exercise of his personal liberty, and seriously impair his freedom of emigration. But the Court said: "If we could see that the legislative purpose was merely to impose a license tax upon persons engaged in the business or occupation of hiring persons to leave the State, we would not be justified in declaring the law violative of the Constitution, because it incidentally affected the right of free egress from the State." The Alabama statute imposed such license tax for a single act of hiring, employing or inducing a laborer to leave the State; the South Carolina statute imposes a license tax upon such business or vocation. It is further contended that the statute in question violates art. X, sec. 1, of the State Constitution, relating to taxation, because the tax is not uniform. We see no violation of the principle of uniformity. The statute operates in every county in the State, and affects every person belonging to the class conducting the business described. The case of *State* v. *Moore* (N. C.), 18 S. E. Rep., 342, is cited on this point, but the North Carolina statute which was declared to be unconstitutional for want of uniformity, imposed such license tax on such business in certain counties and left such business to be freely pursued in other counties. We are of the opinion

that the statute is not unconstitutional in the particulars specified in the exceptions.

The judgment of the Circuit Court is affirmed.