## 10231

### STATE v. REEVES.

(99 S. E. 841.)

1. LICENSES—EMIGRANT AGENT—POLICE POWER.—Cr. Code 1912, sec. 896, prohibiting the carrying on of the business of an emigrant agent without first obtaining a license therefor, was enacted in the exercise of the State's police power, to protect the State's laborers and its agricultural and manufacturing interests.

2. CONSTITUTIONAL LAW— POLICE POWER— REGULATING ACT WITHIN POLICE POWER.—When the doing of an act comes within the police power, the legislature has the authority to prohibit it entirely or to enact such regulations as it may deem advisable.

3. LICENSES—OBJECT—PROTECTION OF PUBLIC.—Regulation of act within police power by requiring a license is for the public's protection, and not for the benefit of licensee.

4. LICENSES— LICENSEE ON OCCUPATIONS— GRADUATED LICENSE TAX— CONSTITUTIONAL PROVISION.—Const., art. X, sec. 1, requiring a uniform and equal rate of taxation and providing that "the General Assembly may provide * * * for a graduated license upon occupations and business," does not require that license tax on occupations falling within the police power should be graduated.

5. LICENSES— CONSTRUCTION OF CONSTITUTION— "SHALL"— "MAY."—In such case the word "shall," used with reference to uniform rate of assessment, is mandatory, and the word "may," used with reference to occupation license, is merely advisory.

6. CRIMINAL LAW—EVIDENCE—PAPERS FOUND ON DEFENDANT.—In prosecution for carrying on the business of emigrant agent without securing a license, papers and documents found on defendant after he was arrested and taken from him by police officers were admissible.

7. LICENSES—EMIGRANT AGENT—SEPARATE TRANSACTIONS.—In prosecution for carrying on the business of emigrant agent without a license, each hiring or solicitation is to be considered as a separate transaction by jury in determining whether defendant was engaged in the occupation of hiring or soliciting laborers to be employed beyond State limits, though the laborers so solicited were all to have left on the same day.

Before PEURIFOY, J., Charleston, Fall term, 1917. Affirmed.

A. B. Reeves was convicted of carrying on the business of an emigrant agent without having obtained a license therefor, and he appeals.

*Messrs. McMillan & Heyward,* for appellant, cite: *Are the provisions of sections 895 and 896 of the Criminal Code of South Carolina 1912, constitutional?* Constitution of 1895, sec. 1, art. X; 18 S. E. (N. C.) 342; 41 S. E. (S. C.) 13; 20 Cyc. 1287. *Is appellant an emigrant agent as contemplated by the legislature when it imposed a license tax upon the business of an emigrant agent?* 36 S. E. (Ga.) 93; 41 S. E. (S. C.), p. 13. *As to the admission in evidence by the Circuit Court of the letters taken from the person of appellant at the police station:* 104 S. C. 146; 81 S. E. 441. *As to the rejection of the Court of the testimony of defendant's witnesses, that prior to arrest, the defendant had approached them with the matter of going to Madison, S. C., and not to Helenwood, Tenn.:* 16 Corpus Juris, p. 547.

*Solicitor Thos. P. Stoney,* for the State, cites: *As to the constitutionality of the act in question:* 89 S. E. (S. C.) 1028; 106 S. C. 102; 63 S. C. 60; the Constitution of South Carolina, article I, section 5; Constitution of the United States, article XIV, sec. 1, article I. *As to Judge's charge to jury upon what constitutes the businesses on emigrant agent:* 63 S. C. 60. *The letters found upon person of appellant were properly admitted in evidence:* 40 S. C. 363; Greenleaf on Evidence, sec. 254; 107 S. C. 304. *The sufficiency of evidence, of course, is a question for the jury:* 103 S. C. 437.

July 14, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted and found guilty of violating an act, now incorporated in the Criminal Code as section 896, which is as follows:

"No person shall carry on the business of an emigrant agent in this State, without first having obtained a license therefor, from the county treasurer of each county in which he solicits emigrants. Any person shall be entitled to a

license, which shall be good for one year, upon payment into the county treasury, for the use of said county, two thousand dollars in each county in which he operates or solicits emigrants, for each year so engaged. Any person doing business of an emigrant agent without having first obtained said license, shall be deemed guilty of a misdemeanor. * * * The term 'emigrant agent,' as contemplated in this act, shall be construed to mean, any person engaged in hiring laborers and soliciting emigrants in this State, to be employed beyond the limits of the same."

The appellant's first exception is as follows:

"Because, it is respectfully submitted, his Honor erred in refusing to quash the indictment in this case, upon the grounds that the act of the legislature upon which the indictment was drawn was unconstitutional, in that (1) it undertook to prohibit an act or acts by itself recognized to be lawful, and in that (2) it placed upon a business a license fee, which was not a graduated license fee, but a prohibitory and discriminating license fee, in violation of the provisions of section 1 of article X of the Constitution, for the State of South Carlina 1895."

We will consider first the proposition numbered 1. The statute was enacted in the exercise of the State's police power. The nature of the statute is shown by the following language of the Court, in the case of *State v. Napier*, 63 S. C. 60, 41 S. E. 13, wherein this statute was construed: "The act * * * does not affect the right of any citizen to leave the State for labor elsewhere whenever he pleases, and to make such contract for his labor as he chooses. The statute, as already stated, affects only those who carry on the business of an emigrant agent, whose vocation is to hire laborers and solicit emigrants to be employed beyond the limits of the State. It is easy to see that the business is of such a nature that the legislature might well see fit to regulate it, not only for the protection of the agricultural and manufacturing interests of the State,

25—112

but for the protection of the laborers themselves against the acts and solicitations of designing and irresponsible persons, who may ply such a vocation in order to levy contributions from the ignorant and allured laborers, and then not to be found when the laborers, according to appointment, appear at the railroad station to take their departure with him to their fields of labor. Payment of the license fee and the issuance of the license by the proper authority afford some guaranty or evidence of good faith in the conduct of such business."

This proposition is also sustained by the case of *Williams v. Fears,* 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186, in which the Court had under consideration a similar statute and used this language:

"It would seem, moreover, that the busines sitself is of such a nature and importance as to justify the exercise of the police power in its regulation."

When the doing of an act comes within the police power, the legislature has the authority to prohibit it entirely or to enact such regulations as it may deem advisable. If it undertakes to regulate such an act by requiring a license, the object is the protection of the public, and it is not intended for the benefit of the licensee. The defendant, therefore, has no right to complain, even though the statute may be regarded as prohibitory in its effect.

We proceed to the consideration of the second ground of unconstitutionality mentioned in the exception.

Section 1, art. X of the Constitution, is as follows: "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property: * * * *Provided* * * * That the General Assembly may provide for a graduated tax on incomes, and a graduated license on occupations and business."

The statute now under consideration was construed by the Court, as we have said, in the case of *State v. Napier,* 63 S.

C. 60, 41 S. E. 13, and all the grounds then urged against its constitutionality, including the provision as to uniformity of taxation in section 1, art. X, were overruled. The question now presented was not, however, before the Court in that case. It was not the intention of the Constitution to require that the license tax on occupations, falling within the police power, should be graduated. Such a requirement would not be of any benefit to the public, but would limit the power of police, which has been defined as the State's right of self-defense. *State v. Aiken,* 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345. It would be unreasonable to suppose that it was the intention of the Constitution to require a graduated license tax in those cases where the licensees were mere instrumentalities in the enforcement of the police power, as in the present case.

There is another reason why the statute is not unconstitutional, on the ground that it failed to provide for a graduated license fee. In section 1, art. X, the word "shall" is used in requiring provision to be made for a uniform rate of taxation; but the word "may" is used in that part of the section referring to a graduated license on occupations. The context shows that the word "shall" was intended to be mandatory, but that the word "may" was merely advisory. This interpretation is in accordance with the rules announced in *Massey v. Glenn,* 106 S. C. 53, 90 S. E. 321. In that case the word "shall" was used in one section of the Constitution, and the word "may" was used in another and inconsistent section. The Court held that "In such a case the rule is applicable that, when two sections of a Constitution are inconsistent, effect will ordinarily be given to that which is in harmony with other provisions, rather than to that which is inconsistent with more than one provision."

The next question is raised by the following exception: "Because, it is respectfully submitted, his Honor erred in

refusing to allow defendant's witnesses to testify as to whether defendant had, prior to his arrest, asked them to go to Madison, S. C., or Helenwood, Tenn., said statements tending to show the intent of the defendant to take the laborers to Madison, S. C., and not to Helenwood, Tenn., as claimed by the State."

The solicitor objected to the question on the ground that it was leading, and objection was sustained. Furthermore, there was other testimony to the same effect—the plaintiff himself so testifying.

Another exception is as follows: "Because, it is respectfully submitted, his Honor erred in admitting in evidence, over defendant's objection, papers and documents found on the defendant, after he was arrested and taken from him by the police officers, in whose custody he was, the taking of him into custody by the officer being at that time illegal and high-handed, in that he was charged only with a misdemeanor, which was not committed in the officer's presence, and the arrest was made without a warrant."

The case of *State v. Harley*, 107 S. C. 304, 92 S. E. 1034, shows that this exception cannot be sustained.

Another exception is as follows: "Because, it is respectfully submitted, his Honor erred in charging the jury as follows: 'I also charge you that it is for you to determine whether or not the facts and circumstances proven here would indicate that he was carrying on that business. Proof of one act would be sufficient, if the facts and circumstances warranted you in concluding that he was carrying on the business charged in this indictment, that is, employing emigrant laborers in this State to be carried beyond the limits of this State;' whereas, he should have charged them, it is respectfully submitted, that the proof of a single act of hiring or soliciting a laborer, to be employed beyond the State limit, would not serve for conviction of the statutory offense under consideration, unless it was under circumstances

which would raise a presumption of other such acts, so many as to constitute the unlawful business or vocation."

In the first place, the charge was in accordance with the ruling of the Court, in the case of *State v. Napier*, 63 S. C. 60, 41 S. E. 13.

In the second place, at least as many as ten laborers had been hired or solicited. Each hiring or solicitation in this case constituted a separate transaction, and was to be considered by the jury in determining whether the defendant was engaged in the occupation of hiring or soliciting laborers to be employed beyond the limits of the State. The fact that a particular day may have been fixed for their departure does not indicate that there was a single act of hiring or soliciting. The hiring and solicitation precede the departure of the laborers. The remaining exceptions raise the question whether there was error on the part of his Honor, the presiding Judge, in refusing to charge that if the jury should find that the laborers were hired by the defendant, to be employed by him temporarily beyond the limits of the State, the defendant was entitled to an acquittal.

It is only necessary to refer to the statutory definition of an emigrant agent to see that it would have been error for the Circuit Judge to charge as requested.

The construction for which the appellant's attorney contends would practically defeat the object of the statute.

Affirmed.