10306

STATE v. BATES.

(101 S. E. 651.)

1. LICENSES—AGENT HIRING MEN FOR WORK OUTSIDE STATE FOLLOWING "BUSINESS OF VOCATION OF HIRING OR SOLICITING EMIGRANTS."—Railroad's agent, who hired two men for railroad construction work outside of State, was engaged in the "business or vocation of hiring or soliciting emigrants" within Cr. Code 1912, sec. 896, prohibiting the engaging in such business without a license.

2. LICENSES—AGENT OF CORPORATION HIRING EMPLOYEES TO WORK FOR CORPORATION IS AN "EMIGRANT AGENT."—One who hired employees for work outside of State was an "emigrant agent" within Cr. Code 1912, sec. 896, prohibiting a person from carrying on the business of an "emigrant agent" without first obtaining license, though in so doing he was, as an agent of a corporation, employing men to work for such corporation, the statute defining an emigrant agent as "any person, engaged in hiring laborers and soliciting emigrants in this State, to be employed beyond the limits of the same."

3. LICENSE—DEFENDANT'S EMPLOYMENT UNDER DIRECTOR GENERAL OF RAILROADS NO DEFENSE IN PROSECUTION AS EMIGRANT AGENT WITHOUT LICENSE.—In prosecution for carrying on business of emigrant agent without first obtaining license under Cr. Code 1912, sec. 896, it was no defense that defendant was acting as an agent for a railroad under the control of a director of railroads, under Act Cong. March 21, 1918, sec. 10 (U. S. Comp. St. 1918, sec. 3115¾j).

9—S. C. 113

*Messrs. George B. Cromer* and *S. R. Prince,* for appellants, submit: *The record does not show that the defendant was engaged in the business or vocation of hiring or soliciting emigrants:* 63 S. C. 60; Standard Directory. *The defendant was acting as an employee of a corporation, withdrawn for the particular occasion from his regular duties as a laborer, and intrusted with the duty of hiring laborers. The statute does not forbid a corporation, through its own employees, to hire or solicit laborers in this State, to be employed by it beyond the limits of the same:* 110 S. C. 336; (Ga.. 39 S. E. 913; (N. C.) 48 S. E. 597; (N. C.) 52 S. E. 140; 71 Ala. 499; 6 Wall. 35; (Va.) 56 S. E. 223. *The statute, as construed by the trial Court, lays an undue burden upon interstate commerce:* 13 Wall. 154-156; Wigmore on Evidence, vol. IV, sec. 2577; 247 Fed. 888; 246 Fed. 786; 84 S. C. 34; 63 S. C. 68; 179 U. S. 270; 99 S. E. (S. C.) 841; 17 R. C. L., p. 493; 187 U. S. 622; 142 Ala. 43; 39 So. 203.

*Solicitor H. S. Blackwell,* for respondent.

December 22, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted, convicted and sentenced, under section 896 of the Criminal Code, which is as follows:

"No person shall carry on the business of an emigrant agent in this State without having first obtained a license from the county treasurer of each county in which he solicits emigrants. Any person shall be entitled to a license, which shall be good for one year, upon payment into the country treasury, for the use of said county, two thousand dollars in each county in which he operates or solicits emigrants, for each year so engaged. Any person doing business of an emigrant agent without having first obtained said license, shall be deemed guilty of a misdemeanor. * * *

The term 'emigrant agent' as contemplated in this act, shall be construed to mean any person engaged in hiring laborers or soliciting emigrants in this State, to be employed beyond the limits of the same."

The witnesses for the prosecution testified:

"That the county treasurer of Newberry county had not issued a license to the defendant to carry on the business of an emigrant agent.

"That the defendant was arrested on the train, May 13, 1918, and that at the preliminary hearing before a magistrate he voluntarily made and signed the following statement: 'Last Monday a week ago my boss man, F. L. Walls, who works as foreman for Southern Railway Company, at King's Mountain, N. C. He gave me a pass to Pomaria, S. C. He told me to go there and hunt some hands if I could. I done like he said do. I did not know that was against the law; he told me to get any kind of hands I could get. These are the only two hands I could get to go with me. He did not warn me not to get hands under contract; he told me to get hands. He gave me a pass for ten men in name of Spencer Wilson.'

"That at the time of his arrest the defendant had in his possession a railway pass, of which the following is a copy:

"Southern Railway System. (11) F. No. BS 5842. May 1st, 1918. Pass Spencer Wilson and ten laborers (colored), account laborers, construction department, to King's Mountain, N. C., from Pomaria, S. C. Good for one trip, until May 15th, 1918. A. Y. Willard. H. B. Spencer, Vice President."

"That at the time of his arrest he had two negroes, Tom Mayes and Eleazer, with him. That the former got on the train at Prosperity, and the latter at Little Mountain, Newberry county. That they were going with him to King's Mountain, N. C. That he told them that he had a pass, and asked them if they wanted to go back with him. That he

said they would give each $1.75 a day and board. That Eleazer paid his own; was on the Columbia, Newberry & Laurens Railroad from Little Mountain to Prosperity, and from Prosperity to King's Mountain he expected to ride on the pass held by the defendant. That he was hiring them to work for the Southern Railway at King's Mountain."

No testimony was offered by the defendant.

At the close of the testimony, the defendant's attorney made a motion for the direction of a verdict on the following grounds:

"(1) That the evidence does not show that the defendant was at the time alleged engaged in the business or vocation of an emigrant agent.

"(2) That uncontradicted testimony shows that the construction department of the Southern Railroad, in North Carolina, then under the control of the Director General of Railroads, sent the defendant, its employee, into this State to solicit ten laborers, to be employed by the said construction department in its work on the Southern Railroad, in the State of North Carolina."

The motion was refused.

The defendant's attorney presented three requests to charge. His Honor, the presiding Judge, charged the first and second, but refused the third, which was as follows:

"I charge you that the act that forbids a person to carry on the business of an emigrant agent in this State without having first obtained a license therefor, does not forbid a person to hire or solicit emigrants in this State to be employed by himself beyond the limits of the same; and if you find from the evidence that the defendant, as agent of the railroad company, or the Director General of Railroads, was engaged in hiring or soliciting emigrants in this State, to be employed beyond the limits of the same by the railroad company, or the Director General of Railroads, then he has not violated the statute, and cannot be convicted."

The defendant appealed upon several exceptions, but his attorney has discussed them under two heads, the first of which is as follows:

"The evidence does not show that the defendant was engaged in the business or vocation of hiring or soliciting emigrants."

It is only necessary to cite the cases of *State v. Napier,* 63 S. C. 60, 41 S. E. 13, and *State v. Reeves,* 99 S. E. 841, to show that the exception raising this question cannot be sustained.

The second proposition upon which the appellant's attorney relies is as follows:

"The defendant was acting as an employee of a corporation, withdrawn for this particular occasion from his regular duties as a laborer, and intrusted with the duty of hiring other laborers. The statute does not forbid a corporation, through its own employees, to hire or solicit laborers in this State, to be employed by it beyond the limits of the same."

In the case of *State v. Reeves,* 99 S. E. 841, this Court had under consideration the question whether there was error on the part of his Honor, the presiding Judge, in refusing to charge that—"If the jury should find that the laborers were hired by the defendant to be employed by him temporarily beyond the limits of the State, the defendant was entitled to an acquittal."

The Court thus disposed of that question: "It is only necessary to refer to the statutory definition of an emigrant agent to see that it would have been error for the Circuit Judge to charge as requested. The construction for which the appellant's attorney contends would practically defeat the object of the statute."

The ruling in that case is conclusive of the question under consideration.

The case of *Williams v. Fears,* 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186, shows that our statute in regard to the carrying on of the business of an emigrant agent is not in

violation of the interstate commerce law, nor of any other provision of the United States Constitution.

The case of *Castle v. Railway Co.,* 99 S. E. 846, is authority for the proposition that the mere possession and control of the railroads of the United States does not empower the railway company to act in violation of the statute of this State, in regard to emigrant agents, unless it is made to appear that there is a general or special order of the Director General to that effect.

In the absence of such order, section 10 of the act of Congress entitled "An act to provide for the operation of transportation systems while under Federal control, for the just compensation of their owners, and for other purposes," approved the 21st of March, 1918 (40 Stat. 541c, 25 [U. S. Comp. St. 1918, sec. 3115¾j]), must govern. That section is as follows: "That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President."

Affirmed.